Next case on the calendar this morning is in Ray Bridge Associates of SOHO, Inc, number 183670. May I please the court? Good morning. My name is Peter Cameron and I represent the appellant, Bridge Associates of SOHO. This appeal involves issues regarding the loft law and coverage of tenants or occupants in the debtor's real property located in Manhattan. The tenants claim that they are covered by the loft law so that they don't have to pay rent. In fact, they haven't paid rent, I guess, in the past 30 or so years. My client obtained the property in 2002, they haven't paid rent to my client. There's no question that the property is not in compliance with the health and safety codes of the city of New York. It's not in compliance with the loft law. There's no dispute that the occupants haven't paid rent either. This appeal involves- Is there any dispute that the failure to comply with the codes precludes your client from collecting rent? Well, collecting rent is exactly what's one of the largest issues in what this appeal is about. But haven't you said that it does preclude, but it doesn't preclude him from receiving rent? Yes. Is that your position? Yes. So there's no disagreement that your client may not collect rent within the meaning of the statute, right? Right. He can't force them to pay rent, cannot evict based on non-payment of rent. There's no question about that. Our position is that for the tenants to be covered under the loft law, they have to pay rent. And section 286-2- But your client can't enforce that? Correct, Your Honor. My client cannot- You have to voluntarily pay rent. If they want the benefit of the protection of the statute, yes, they do. My client can accept it. There's no prohibition on that. He would then turn around that and pay that in fines to the city of New York. So there's no real benefit for my client to do that, because he's still going to pay a mortgage and taxes. But the tenants get, that's how they get the benefit of the protection of living there forever, basically. Right now, they're not paying rent, and basically, they've been living for free for the past 40 years. Can't be kicked out, right? You couldn't kick them out. Our position is that we can't. You could bring an eviction proceeding- Based on a hold, as a holdover, because they're not covered by the loft law. That was our argument in front of the bankruptcy court. Judge Grossman disagreed with us. He certified it to the Second Circuit, and here we are. Forget the holdover. How about during the term of the lease, they don't pay rent because you're not in compliance. Can you evict them under those circumstances? Can you evict them? I mean, I don't see how you could. I would say- I would say, if they didn't pay rent, yes, they could be evicted as a holdover. As long as you're not seeking to obtain possession based on not- I thought the holdover pertained if they were holdover after the lease terms were over. I'm sorry. I'm talking about during the lease. During the lease term, I agree with Your Honor, no, you couldn't. It's not a holdover. On the other hand, is it your position that you could sell the property free and clear of the tenants during the lease because they haven't paid rent? During the lease? No. But these leases expired decades ago. There are no leases here. Could you destroy the building? No, I don't believe so. I don't think anybody would let a landlord destroy a building with people in it. Well, you could give them some warning. Yes, we could. But no, I don't think that's a practical solution. But that, eventually that is the goal. We intend to sell it free and clear of all interests. And I assume whoever's going to buy, it's going to knock it down and build something extravagant. But in a nutshell, that's our argument. Is this a question that we should certify to the New York Court of Appeals, it being a question of the interpretation of New York statutes? It, asking me is difficult because I see it so clearly. But it is completely involving New York law, solely New York law. And just like with Santiago Monteverdi, that probably is a option. One option. It's a good option, probably. Okay. Thank you. Will you have three minutes of rebuttal? I mean, you should feel free to, you have two more minutes if you'd like, but it. I'm fine. Okay. Thank you. Okay, we'll hear from your opponents. Mr. Wiener. Good morning, Your Honors. Bruce Wiener for the Statutory Tenants. The debtor is completely twisting New York law to create a windfall for itself. The debtor bought this property in 2002, subject to the rights and interests of those statutory tenants who had been there for decades. The prior owner, at least since 1993 when it registered the building as an intermultiple dwelling, recognized that the tenants were protected by the law flaw. It then sold the building in 2002. This owner, the debtor here, registered the building from 2002 to 2007, thereby recognizing that the statutory tenants were protected by the law flaw. It took, it failed to legalize the building in the 17 years that it's owned the building. It didn't take the required steps to legalize. How many, excuse me, how many statutory tenants are there? I think there are 14, Judge. 14, and it is true that they've been living there for decades without paying rent. Is that right? Yes, but there were some periods of time where under state law, because we had injunctive relief, it was conditioned upon payment of use and occupancy without prejudice, but those, for at least the period of time that this owner has owned the building, there has been no payment of rent because there has been no compliance. Do they make, who pays for repairs? How do- The tenants have paid for the upkeep of the building for decades. They pay for the fuel. They pay for the repairs. They pay for their own heat and hot water. This landlord had walked away from the building literally more than 10 years ago, about 12 years ago, after going through what was called the narrative process at the loft board, reaching an agreement with the tenants to legalize the building. It then walked away and has provided no services, paid no taxes since then on the building, and wants now to create a windfall by being able to sell the building free and clear. Occupancy rights under the loft law are not dependent upon the payment of rent. That's a circular argument. The New York Court of Appeals in the Chazen case has made it very clear, and there's no need to certify that issue to the Court of Appeals. It's in black letter law in New York that a landlord who is not in compliance with the loft law cannot collect rent. It cannot bring any proceedings to collect rent. It cannot bring any eviction proceedings. The loft law does not require that there be a lease. In fact, in most cases, there were no leases at the time that this statute was enacted. And 286 only requires that it be the tenant's primary residence for protection. The second phrase that's set off as a comma that relates to rent limits the amount of rent that a landlord who is in compliance can collect. It doesn't say that you have to pay rent voluntarily to be under the protection of the law. The law set up as a carrot and stick approach that the landlord would have to legalize to be in compliance. First of all, it doesn't require final legalization. There are steps along the way that if the landlord complies with those steps, and the debtor here has complied with none of those steps, it can collect rent subject to a final certificate of occupancy. Those steps are to go through the narrative process, obtain an alteration, file an alteration application, and obtain a permit. At that point, the owner is in compliance. Even though it doesn't have final legalization of the building, it can collect rent. It can sue for rent. It can bring eviction proceedings if it's gotten its permit. This landlord is more than 17 years late in doing that. It never got a permit to do any work. It never did any work. Walked away from the building entirely. And then when the property was about to be auctioned for failure to pay taxes, filed a Chapter 11 to stop the auction sale of the property. And then tried to use the bankruptcy code where this court and other courts, the district courts, have found in analogous circumstances in rent regulation and rent control, rent stabilization, the Monteverde case, the Friarton case, other cases that the bankruptcy laws can't be used to end the protections of rent regulation. This is only novel because it involves the Loft Law, but the principles are the same. Loft tenants, once there's legalization, go into the rent stabilization system. This is only a temporary place, even though it's been decades here. It was supposed to be a temporary place where legalization would occur, and then the tenants would go into the rent stabilization system. That should have happened decades ago. The prior owner didn't take any steps to legalize, and this owner has not. Thank you. Thank you very much. We'll hear from the city. Good morning, your honors. May it please the court. Diana Lawless on behalf of the New York City Loft Board. I think a lot of this has already been covered. I'd just like to emphasize a few points. The building here could only be sold free and clear of the tenant's interest if applicable non-bankruptcy law permitted a sale or if there's a bonafide dispute. The applicable non-bankruptcy law is the Loft Law. The Loft Law gives the tenants the right to occupancy premised only on their primary residence. The debtor seems to concede primary residence. Also, it's clear he also concedes that he cannot collect rent. He concedes that he cannot evict them for the non-payment of rent. All that the debtor is trying to do is trying to avoid the bank, to avoid the Loft Law, to avoid New York law and try to use the bankruptcy code in order to do something he cannot do under New York law, which cannot be done. I'd also like to emphasize that the New York Court of Appeals made clear our reading of the statute in the Chazen case. There's no distinction between this and Chazen where it held that the owner cannot evict the tenants, like these tenants, who have not paid rent because the owner is out of compliance. I think the only gloss here is the bankruptcy code. So to answer Judge Carney's question about certification, which we did not brief, I see that the case is squarely governed by Chazen. Thank you. Thank you very much, Mr. Cameron. You have 3 minutes of rebuttal. Just briefly, with regards to the Chazen case, I believe it was decided correctly, but I don't believe that it's relevant to this case at all. There, the Court of Appeals, it was assumed that those tenants were protected. And if they are protected, I admit, they cannot be evicted for nonpayment of rent. But that is not what's happening here. I'm saying that they're not protected because they haven't paid rent, and that's the rent that they have to pay. I'm sorry, explain again, please, why Chazen doesn't control? Because it was assumed there that those tenants were protected by the loft laws. It was assumed? Yes. And that's what the decision says, that if you're protected, you cannot be evicted for nonpayment of rent. Here we're saying they're not protected because they haven't paid rent under 286-2i, which does, it says nothing about after compliance, paying rent. It says, and shall pay the same rent. I'm sorry, what are you pointing to? It's the text of MDL-286-2-2i. Yes, yeah. It says, and shall pay rent. Then the balance of the statute talks about escalations after steps regarding compliance. To me, initially, that means there's a base rent that has to be paid. To get the benefit of the loft law statute for the tenants. It's a carrot and stick both ways. The landlord may be stuck with somebody paying- How do you reconcile that with 302? I mean, I don't understand how you, 302, aren't you just basically eliminating 302 with your interpretation? I mean, 302 says no rent should be recovered by the owner, and no action or special proceeding should be maintained for possession for non-payment of rent. And 286 says she'll pay the same rent, but it speaks in terms. I mean, the only way I can reconcile it is that the owner under 286 is in compliance. But under 302, it's essentially the same argument. We're not trying to force, we cannot force a tenant to pay rent. There is no way we can force a tenant to pay rent. But if they want the benefit of this statute and their continued occupancy, they have to pay that rent. That may be $200 a month from 1982. Right. And the landlord's stuck with that. But you said there are no leases in effect. So how would we know what rent needed to be paid? We would have to determine that through. Okay. I think we have the arguments. Thank you very much. We'll take the matter under advisement. Thank you. Next.